[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This Memorandum relates to the defendant's Post Judgment CT Page 767 Motion to Modify Alimony dated December 18, 1997. Based on the evidence adduced at the hearing, the court makes the following findings and orders.
The parties' marriage was dissolved in this court on June 13, 1989. At the time, the parties entered into a marital separation agreement which contained the following alimony provision: "Commencing upon June 16, 1989, Terry shall pay to the (sic) Dolores for her support and maintenance, as periodic alimony, the sum of $375.00 per week for sixteen years. Alimony will terminate absolutely as to term and amount upon the earlier of the following: June 8, 2005; Dolores' remarriage; the death of either party. For federal tax and all other tax purposes, such alimony payment shall be includable in Dolores' income and deductible by Terry." Plaintitt's Exhibit 1, Separation Agreement dated June 13, 1989. The language of the marital dissolution judgment essentially mirrors this wording.
By motion dated December 17, 1997, the defendant has moved to modify the order of alimony. While his motion cites several reasons for his quest, the defendant stipulated at the commencement of this hearing that the only basis on which he was proceeding was his claim that the plaintiff is living with another person under circumstances which alter her financial needs. In return, the plaintiff agreed to forego pursuit of her motion, dated May 29, 1998, in which she sought an increase in alimony based on a substantial change in financial circumstances. Thus, the sole factual issue presented for the court's determination is whether the plaintiff is living with another person under circumstances which alter her financial needs, and if so, whether such circumstances warrant a change in the alimony order.
At the outset, the court notes the plaintiff's claim that the existent alimony order is non modifiable. The court disagrees. Connecticut General Statute 46b-86 provides, in part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . ." This section has been construed as providing for continuing jurisdiction over alimony awards, absent a provision in the decree to the contrary. Bernardv. Bernard, 214 Conn. 99 (1990). In Rau v. Rau, CT Page 76837 Conn. App. 209, 211-212 (1995), the Appellate Court provided a useful review of applicable decisional law on this point. The court stated: "this statutory provision, `suggests a legislative preference favoring the modifiability of orders or periodic alimony . . . [and requires that] the decree itself must preclude modification for this relief to be unavailable.' Scoville v. Scoville,179 Conn. 277, 279, 426 A.2d 271 (1979). If an order for periodic alimony is meant to be nonmodifiable, the decree must contain language to that effect. Commock v. Commock, 180 Conn. 218,222-23, 429 A.2d 474 (1980); Neal v. Neal, 7 Conn. App. 624,625, 510 A.2d 210 (1986). Such a preclusion of modification must be clear and unambiguous. McGuinness v. McGuinness,185 Conn. 7, 9, 440 A.2d 804 (1981); Lilley v. Lilley, 6 Conn. App. 253,504 A.2d 563, cert. denied, 200 Conn. 801, 509, A.2d 216 (1986). If a provision purportedly precluding modification is ambiguous, the order will be held to be modifiable. Bronson v. Bronson,1 Conn. App. 337, 339, 471 A.2d 977 (1984), citing Commock; v.Commock, supra, 180 Conn. 222-23." In this instance, the judgment contains no language precluding modification. Thus, if either party had chosen to pursue his or her motion to modify on the basis of a substantial change of financial circumstances, the court would have had jurisdiction to act.
Similarly, the court has jurisdiction to respond to the defendant's motion brought under the provision of C.G.S.46b-86(b), commonly, though by misnomer, known as the cohabitation statute. C.G.S. 46b-86(b) provides, in part, that: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." The defendant's motion parallels this statutory language. He has the burden of proving that his former wife is living with another person and that the attendant living arrangements have caused a change of circumstances which alter the plaintiff's financial needs. CT Page 769
At the time of the marital dissolution, the parties were both Connecticut residents. From the date of the marital dissolution until mid 1997, the plaintiff resided and worked in Connecticut. She was employed as a bookkeeper at an annual salary of approximately forty thousand ($40,000) dollars and living in the former marital home in Somers, deeded to her as part of the marital dissolution agreement. Prior to 1997, the plaintiff had become friendly with Robert Potvin, who had lived and been divorced in Connecticut and had since relocated to Cleveland, Ohio. During 1997, Mr. Potvin called the plaintiff to inform her that he had taken new employment in Florida, and he invited her to relocate to Florida to reside with him. The plaintiff accepted. Accordingly, she resigned her position, sold her home and moved to Florida where she and Mr. Potvin presently reside. Mrs. Kuzman and Mr. Potvin live at 14680 Banana Tree Lane, Clearwater, Florida, in a home in Mr. Potvin's name alone. The house has three bedrooms, two baths, a dining room, family room, living room, dinette, and an enclosed pool.
The plaintiff and Mr. Potvin house-hunted together. In conjunction with the closing, and because she wanted to live in a home with a pool, Mrs. Kuzman loaned Mr. Potvin fifteen thousand ($15,000) dollars to enable him to purchase a nicer home that he could have afforded on his own. By the terms of this loan, Mr. Potvin is obligated to repay Mrs. Kuzman in ten years with annual interest of five (5%) percent accumulating until both interest and principal are due. In short, he is not obligated to make any payments for ten years. While there is no security for this loan, Mr. Potvin testified that he purchased term life insurance with a declining death benefit starting at one hundred thousand ($100,000) dollars with Mrs. Kuzman as the beneficiary. Though he stated that Mrs. Kuzman, and not the bank, is the beneficiary of this insurance, he characterized it as mortgage insurance, and claimed that the payout declines as the principal of the mortgage is reduced. While Mr. Potvin stated that he considers this insurance arrangement as some protection for Mrs. Kuzman should he predecease her, he indicated that his three grown children are the beneficiaries of his estate, and he has not told them of any desire on his part that Mrs. Kuzman be entitled to remain in the house should he predecease her. While the evidence concerning life insurance is muddled, it is some indication that the relationship between Mr. Potvin and Mrs. Kuzman is not ephemeral. When the home was purchase, Mrs. Potvin obtained a mortgage of ninety-two thousand ($92,000) dollars requiring monthly payments, including tax escrow and insurance, of nine hundred and seventeen CT Page 770 ($917) dollars. He alone makes this payment. Mrs. Kuzman, in turn, pays for food and the monthly utility, telephone, cable, and pool maintenance bills. When the parties travel, dine out, or attend entertainments, as they periodically do, they share the costs.
The house contains furniture brought to Florida by Mrs. Kuzman as well as furniture she has purchased in Florida. None of the furniture was provided by Mr. Potvin. Additionally, the washer and dryer in the house were purchased by Mrs. Kuzman. Mr. Potvin pays the cost of landscaping and repair work to the house. Though Mrs. Kuzman has paid a few home repair bills, Mr. Potvin has reimbursed her for these amounts.
Mrs. Kuzman and Mrs. Potvin reside together in a monogamous sexual relationship. When first in Florida, and for a period of approximately four months, they had a joint checking account into which they both made deposits, and from which household expenses were paid. It appears from the evidence that most of the deposits came from Mrs. Kuzman and that this joint account ended around the time Mr. Kuzman moved to modify the existing alimony order. Mr. Potvin and Mrs. Kuzman no longer bank together.
Mr. Potvin is employed in Florida earning approximately fifty-three thousand ($53,000) dollars annually. Though Mrs. Kuzman did not seek employment for several months following her relocation to Florida, she is now working and earning approximately seventeen thousand ($17,000) dollars a year.
When Mrs. Kuzman lived in Connecticut, she had the sole responsibility to pay the home mortgage, taxes, and insurance on her Somers home as well as other expenses attendant to her living circumstances. Now she lives in a home without having to pay any rent, mortgage, taxes, and insurance, and she continues to be responsible for payment of monthly housing and personal needs costs. Additionally. she has undertaken the responsibility to purchase food consumed at home by Mr. Potvin and herself though he contributes to this expense when he entertains his family members at home.
In order to prevail in his motion, the defendant has a two-fold burden. He must prove that his former wife is living with another person. That much is conceded by the plaintiff and found by the court. Additionally, the defendant must prove that his former wife's living arrangement has caused a change of CT Page 771 circumstances which alters her financial needs. As noted by the Appellate Court, this second prong, requires proof only of a change of circumstances altering the alimony payee's needs, and not a substantial change of circumstances. cf. Duhl v. Duhl,7 Conn. App. 92 (1986). The defendant need not prove that his former wife and Mr. Potvin have a relationship of financial interdependence such as is found in a common law marriage. Id.
The fact that Mrs. Kuzman is living in Mrs. Potvin's home without having to pay rent or contribute toward the mortgage payment constitutes an alteration in her financial needs.
Having found that the defendant has proven both prongs of the requirement for application of 46b-86(b) does not lead inescapably to a determination that the alimony order should be terminated, suspended, or reduced. The court's response to the facts is a matter of judicial discretion. In making its decision, the court is mindful that the parties were married for nearly twenty-seven years and the present order of alimony is time-limited. While the circumstances of Mrs. Kuzman's residing with Mr. Potvin have altered her financial needs, they have not eliminated her continuing entitlement to some support from the defendant for the limited duration of the alimony award. Accordingly, the motion to modify is granted to the extent that the defendant is ordered to pay periodic alimony to the plaintiff in the amount of one hundred and twenty-five ($125) dollars a week. In all other respects, the terms of the judgment remain in full force and effect.
This order is retroactive to December 29, 1997, the date the defendant's motion was served upon the plaintiff. In light of the evidence that the defendant has continued to pay alimony at the judgment rate during the pendency of this motion, as required, the imposition of retroactivity by the court results in an overpayment by the defendant. The defendant shall pay alimony at the modified rate by a cash payment of seventy-five ($75) dollars a week, receiving credit for overpayment at the rate of fifty ($50) dollars a week until the overpayment has been fully discharged.
No counsel fees are awarded to either party.
Bishop, J. CT Page 772